1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

UNITED STATES OF AMERICA,

8

Plaintiff,

Case No.  14-cr-00607-PJH-3

9

v.

**PRETRIAL ORDER NO. 2**

10

GLENN GUILLORY,

Doc. nos. 166, 179, 185

11

Defendant.

12
13
14

This matter came on for status and pretrial conference on March 15, 2017.

15

Following severance of defendant Glenn Guillory from co-defendant Thomas Joyce for

16

trial, and the continuance of Guillory's trial date due to defense counsel's medical

17

condition, the parties were given leave to file supplemental pretrial papers, but neither did

18

so.  The court rules on the pending motions in limine and other pretrial matters as follows:

19

**I.      Motions in Limine**

20

     **A.      Government's Motions in Limine (doc. no. 179)**

21

          1.      The government's motion in limine ("MIL") No. 1 to prohibit defendant

22

from introducing evidence or argument that the bid-rigging agreements were reasonable,

23

or that the victims were negligent about the bid-rigging conduct, is GRANTED pursuant to

24

the court's earlier ruling in Pretrial Order No. 1 denying defendants' motion to adjudicate

25

the Sherman Act count pursuant to the rule of reason.  Doc. no. 139.  There, the court

26

held that bid-rigging is widely recognized as a form of price-fixing, which is "conclusively

27

presumed to be unreasonable and therefore illegal without elaborate inquiry as to the

28

precise harm they have caused or the business excuse for their use."  *Northern Pac. Ry.*

1   *Co. v. U.S.*, 356 U.S. 1, 5 (1958).  The court further ORDERS that the government shall

2   refrain from using the term "victims" when referring to the banks, trustees, and

3   beneficiaries, to avoid unnecessary confusion about harm given that the government

4   does not need to prove any injury or financial loss as an element of bid-rigging, and shall

5   instead refer to them as banks, trustees and beneficiaries.

6            2.      The government's MIL No. 2 to admit evidence of cooperating

7   witnesses' guilty pleas and plea agreements, as properly considered by the jury in

8   evaluating witness credibility, is GRANTED subject to the following procedures:

9            (a) The truthfulness provisions of the plea agreements must remain

10   redacted, unless the witness's credibility is attacked.  *See U.S. v. Monroe*, 943

11   F.2d 1007, 1013 (9th Cir. 1991) ("a reference to the 'truthful testimony' provisions

12   of a witness's agreement with the government does not constitute vouching if it is

13   made in response to an attack on the witness's credibility because of his plea

14   bargain").

15           (b) The government's questioning during its case-in-chief is limited to the

16   existence and terms of the guilty pleas and plea agreements, including the factual

17   basis of the plea, the fact that the cooperator has yet to be sentenced, and the

18   hope of receiving a reduced sentence partly due to their testimony at trial.

19           (c) References to the potential sentence or potential maximum statutory

20   sentence that the cooperator could receive must be redacted because it may

21   signal to the jury the punishment that defendant is facing, though that is a

22   prohibited consideration; however, the court may permit evidence of a mandatory

23   minimum sentence that a witness faces in the absence of a motion by the

24   government.  *See U.S. v. Larson*, 495 F.3d 1094, 1106 (9th Cir. 2007) (en banc)

25   (district court may prohibit cross-examination regarding the potential maximum

26   statutory sentence that the witness faces, which lacks significant probative force

27   because a defendant seldom receives the maximum penalty permissible under the

28   statute of conviction; by contrast, the mandatory minimum sentence that a witness

United States District Court
Northern District of California

1    will receive in the absence of a government motion is "highly relevant to the

2    witness' credibility").

3            (d)   To minimize the risk of undue prejudice to defendant by introducing

4    evidence of the cooperating witnesses' plea agreements, the court will give limiting

5    instructions based on Ninth Circuit Model Criminal Jury Instruction 4.9 and the

6    ABA model instructions for criminal antitrust cases, as proposed by the parties.

7    *See* Proposed Instruction Nos. 37, 38 (doc. no. 191).

8    Under settled Ninth Circuit authority recognizing the probative value of plea agreements

9    for evaluating witness credibility, the court holds that the probative value of evidence of

10   the plea agreements, as limited herein, is not "substantially outweighed by a danger of"

11   unfair prejudice to defendant pursuant to FRE 403.  *U.S. v. Halbert*, 640 F.2d 1000, 1004

12   (9th Cir. 1981) ("evidence of the plea is relevant to credibility regardless whether

13   government or defendant initiates inquiry about it"); *United States v. Anderson*, 532 F.2d

14   1218, 1230 (9th Cir. 1976).

15           3.      The government's MIL No. 3 to exclude any evidence or argument

16   impeaching a witness by introducing evidence of conviction of a crime pursuant to FRE

17   609(a) is GRANTED as unopposed as to witness Vesce, given that none of the prior

18   convictions disclosed by the government meet the standard for impeachment under the

19   rules of evidence.  With respect to witness Barta, the government withdrew its MIL No. 3

20   to exclude evidence of Barta's 2007 application for a mortgage and home-equity line of

21   credit after conceding its admissibility as impeachment evidence.  The government's MIL

22   No. 3 with respect to excluding evidence of citizen complaints is GRANTED on the

23   ground that the prejudicial effect would outweigh any limited probative value of the

24   complaints from private citizens, which were not vetted for accuracy or investigated, and

25   the complaints from private citizens and the California Dept. of Transportation which are

26   not relevant to the bid-rigging conspiracy and/or are not probative of character for

27   truthfulness.

28

United States District Court
Northern District of California

3

1
2
3
4
5
6
7
8
9
10
11

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.	The government's MIL No. 4 to admit business records and public records under FRE 803(6), (8) and (15), and self-authenticating documents pursuant to FRE 902(1), (4) and (11) is PROVISIONALLY GRANTED, subject to objections that the defense may raise at trial as to specific documents.

5.	The government's MIL No. 5 to exclude evidence or argument about nontestifying coconspirators is GRANTED as unopposed.  If either party seeks to refer to a nontestifying coconspirator's plea agreement or pending indictment, the party must first make a proffer for its admissibility.

6.	With respect to the government's notice of intent to admit summary charts pursuant to FRE 611(a), doc. no. 189, the court determines that the charts proffered by the government would avoid wasting time from introducing all the underlying documents.  The court further determines that the charts do not appear to be argumentative or to include selective information from the underlying documents, as with the summary charts that were ruled inadmissible in the first trial in *U.S. v. Florida*, CR 14-582.  The court will admit non-argumentative charts as summary charts under FRE 611(a).  The charts may also be admissible or useable as demonstratives under FRE 1006.  *See U.S. v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (summary chart was properly admitted where use of the chart in court contributed to the clarity of the presentation to the jury, avoided needless consumption of time and was a reasonable method of presenting the evidence).

7.	The government has indicated its intent to introduce, under FRE 404(b), two sets of ledgers seized by the FBI from the office of Community Fund, which is owned by Michael Marr who is charged in a separate case, *U.S. v. Marr,* CR 14-580.  The government contends that as to defendant Guillory, the Renquist and Joyce ledgers "help explain the purpose of the exact same ledger for Guillory that Community Fund maintained (for example, they will help to establish that the Guillory/Community Fund ledger in fact tracks bid-rigging payments, not payments for some other purpose)."  Doc. no. 221 at 2.  The government stated in the initial pretrial filings that

4

United States District Court
Northern District of California

1   Renquist would testify about the form and purpose of the Community Fund ledgers

2   because the exact same type of ledgers were used to track Contra Costa County round

3   payments, *id.* at 3, but Renquist will not be called as a witness in this trial.  The

4   government represented at the hearing that it will call witness Bishop to authenticate the

5   ledgers, and the court will reserve ruling whether his testimony is sufficient to

6   authenticate the ledgers pursuant to FRE 901(a).  "The government need only make a

7   prima facie showing of authenticity, as the rule requires only that the court admit

8   evidence if sufficient proof has been introduced so that a reasonable juror could find in

9   favor of authenticity or identification.  The government must also establish a connection

10  between the proffered evidence and the defendant."  *United States v. Tank*, 200 F.3d

11  627, 630 (9th Cir. 2000) (citations and internal marks omitted).  Accordingly, the ledgers

12  seized from Community Fund's offices will not be admitted unless the government

13  establishes a proper foundation to authenticate those records, such as through the

14  testimony of a witness with personal knowledge.  FRE 901(b)(1) ("Testimony that an item

15  is what it is claimed to be.").

16      **B.    Defendant's Motions in Limine**

17          1.    Defendant's MIL No. 1 to exclude references to other bid-rigging

18  trials, which was jointly filed with co-defendant Joyce, is DENIED on the ground that

19  evidence related to other bid-rigging trials may be introduced as relevant background,

20  subject to the instruction that the parties should minimize any references to trials

21  involving bid-rigging in counties other than Contra Costa County.  Doc. no. 185.

22          2.    Defendant's MIL No. 2 to grant additional peremptory challenges is

23  DENIED AS MOOT following severance of Joyce and Guillory's trials.

24          3.    Defendant's pretrial conference statement raised requests for

25  disclosures.  Doc. no. 193.  The government confirmed that the requested materials in its

26  possession have been produced to the defense, and that it will continue to meet its

27  disclosure obligations.  The government has disclosed the identity of the confidential

28  source, who will testify under his or her true name.

1    **II.    Coconspirator Statements**

2         **A.    Legal Standard**

3              In order for a coconspirator statement to be *admissible* at trial under Federal Rule

4    of Evidence 801(d)(2)(E), the prosecution must show by a preponderance of the

5    evidence that:

6              (1) the conspiracy existed when the statement was made;

7              (2) the defendant had knowledge of, and participated in, the conspiracy; and

8              (3) the statement was made "in furtherance" of the conspiracy.

9    *United States v. Larson*, 460 F.3d 1200, 1212 (9th Cir. 2006), *adopted in relevant part on*

10   *reh'g en banc*, 495 F.3d 1094, 1096 n.4 (9th Cir. 2007).  However, the *introduction* of

11   coconspirator statements is distinct from the issue of *admissibility*.  That is in part

12   because the court considers all of the evidence, even the defendant's evidence, in

13   making the ultimate admissibility determination.  *See* GRAHAM, 30B FEDERAL PRACTICE &

14   PROCEDURE, EVIDENCE § 7025 at 303-04 (2011 interim ed.) ("[a]t the conclusion of the

15   presentation of evidence, the trial court on motion must determine *on all the evidence*

16   *including evidence offered by the defendant* whether the government has established the

17   requisite foundation to be more probably true than not true") (emphasis added).

18              It is within the court's discretion to determine the order of proof or the showing, if

19   any, that is appropriate prior to the government's *introduction* of the coconspirator

20   statements.  *United States v. Arbelaez*, 719 F.2d 1453, 1460 (9th Cir. 1983) (concluding

21   that it was not an abuse of discretion for the court to allow the government to introduce

22   coconspirator statements prior to establishing prima facie the existence of a conspiracy).

23   Courts have utilized various approaches regarding the order of proof.  One such

24   approach has been the provisional or conditional admission of the statement subject to it

25   later being "connected up" at "the conclusion of the presentation of evidence," at which

26   time the court must determine whether the government has established the requisite

27   foundation (as set forth by the Ninth Circuit in *Larson*) to be more probably true than not

28   true.  *See* GRAHAM, 30B FEDERAL PRACTICE & PROCEDURE, EVIDENCE § 7025; MUELLER &

United States District Court
Northern District of California

1   KIRKPATRICK, 4 FEDERAL EVIDENCE § 8:62, Procedure for Applying Coconspirator

2   Exception (4th ed., updated May 2016); *Arbelaez*, 719 F.2d at 1460.

3       Another approach includes what has essentially been deemed a mini-trial or

4   *James* hearing in advance of trial at which the court may consider each proffered

5   coconspirator statement and determine whether the government has established the

6   required foundational requirements as to each statement.  *See* GRAHAM, FEDERAL

7   PRACTICE & PROCEDURE, EVIDENCE § 7025 (citing *United States v. James*, 590 F.2d 575,

8   581-82 (5th Cir. 1979) (en banc)).  In a third approach, which has been deemed the

9   "middle course," the court requires the government to make a preliminary showing or

10  summary of its evidence establishing the predicate facts, while deferring the final decision

11  until the conclusion of the presentation of the evidence.  *See* MUELLER & KIRKPATRICK, 4

12  FEDERAL EVIDENCE § 8:62; *see also United States v. Cox*, 923 F.2d 519, 526 (7th Cir.

13  1991) (the "preferable procedure would be to at least require the government to preview

14  the evidence which it believes brings the statements within the coconspirator rule before

15  delving into the evidence at trial").

16      This court adopts the "middle course" on the government's requisite showing prior

17  to introduction of the coconspirator statements.  In accordance with this approach, the

18  court will preview prior to trial a summary of the coconspirator statements to be offered by

19  the government.  Following this preview, the court will determine which statements the

20  government will be permitted to introduce, either through the testimony of a witness or by

21  documentary evidence.  Even though the ultimate finding as to admissibility will not be

22  made until after the trial has commenced and perhaps as late as the close of the

23  evidence, the witnesses will be permitted to testify about coconspirator statements and

24  documents containing such statements will be published to the jury, subject to striking

25  should the government not be able to meet its burden as to all requirements for

26  admissibility.  In this sense, the government's introduction of the statements which will

27  have been previewed and approved by the court, will result in their conditional admission.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The court may at some point during trial, and prior to the close of the evidence,

2    rule on whether the government has shown by a preponderance of the evidence two of

3    the three prongs required for the admissibility of all of the proffered coconspirator

4    statements, including that (1) the conspiracy existed when the statement was made; and

5    (2) that the defendant had knowledge of, and participated in, the conspiracy.  *Larson*, 460

6    F.3d at 1212.  The court, however, will not determine until *after* the witness testifies

7    and/or the documentary evidence containing the particular coconspirator statement is

8    introduced whether or not the government has shown by a preponderance of the

9    evidence that the statement was made "in furtherance" of the conspiracy.  *See id.*  A

10   coconspirator statement will NOT be unconditionally admitted into evidence until the court

11   has determined that all three *Larson* prongs have been satisfied as to that statement.

12   As set forth in *United States v. Coleman*, CR 11-904 PJH, and *United States v.*

13   *Zaragoza*, CR 08-83 PJH, the court has established a protocol requiring the government

14   to disclose the following information with a list of the coconspirator statements to be

15   introduced at trial:

16       (1) the identity of the testifying witness and/or the source of the conspirator

17           statement;

18       (2) a statement describing the witness and/or the source of the conspirator

19           statement;

20       (3) a summary of the evidence showing that the proffering witness, if a

21           coconspirator, knew about and participated in the conspiracy;

22       (4) the *specific* coconspirator statements to be introduced via that witness and/or

23           the source of the conspirator statement;

24       (5) the identity of the declarant of *each* specific coconspirator statement; and

25       (6) a summary of the evidence showing that *each* declarant of the coconspirator

26           statement(s) knew about and participated in the conspiracy.

27   *Zaragoza,* doc. no. 574 (Amended Order for Pretrial Preparation).  The government must

28   also provide particulars of when the proffered statement was made, to establish that it

8

1  was made during the relevant period.  *Larson*, 460 F.3d at 1211 (requiring the

2  government to establish that "the conspiracy existed when the statement was made").

3  This requirement may be satisfied by providing sufficient detail to determine whether the

4  statements were made in the course of, and in furtherance of, the conspiracy, and does

5  not require the government to identify the exact date and time that the statement was

6  made.  *See Coleman,* doc. nos. 97 (granting in part motion to clarify pretrial order) and

7  122 (clarifying pretrial order).

8  **B.    Discussion**

9  The government timely filed its initial notice of coconspirator statements in

10  compliance with the court's disclosure protocol.  Doc. no. 166.  Defendant timely filed

11  objections to the coconspirator statements.  Doc. no. 194.  The government filed four

12  supplemental notices of coconspirator statements, to which the court extends defendant's

13  objections.  Doc. nos. 174, 215, 223, 225.

14  The government prepared charts organizing the coconspirator statements by type

15  of document, and specifying the date of the alleged coconspirator statement:

16  (A) round sheets which tracked the individuals participating in each round,

17  the order of bidding, amount of each coconspirator's terminal bid, and the

18  winner of the round.  *See* Appx. A; Suppl Appx. A; 2d Suppl. Appx. A.

19  (B) payment ledgers which listed the properties in which coconspirators

20  participated in a round, and the amount of payoff on each property.  *See*

21  Appx. B and Suppl. Appx. B; 2nd Suppl. Appx. B.

22  (C) emails regarding payments owed for rounds.  *See* Appx. C.

23  (D) consensual audio-video recordings of coconspirator statements.  *See*

24  Appx. D.

25  (E) other documents containing coconspirator statements: notes on the

26  memo lines of payoff checks, and other coconspirator notes relating to

27  meetings and payoffs such as Outlook calendar entries noting the dates of

28  payoffs and Wesley Barta's notes summarizing the results of rounds.  *See*

1    Appx. E; Suppl. Appx. E; 2d Suppl. Appx. E.

2          (F) anticipated testimony of witnesses about what coconspirators

3    said to reach agreements.  The summary chart in Appendix F is taken from

4    witness interview reports, which have not been reviewed or adopted by the

5    witnesses, and are not verbatim transcripts.  *See* Appx. F; Suppl. Appx. F.

6    To satisfy the first *Larson* prong, the government's brief in support of the notice

7    establishes the existence of a conspiracy among competitors not to bid against each

8    other at public auction, involving 3 steps: (a) refraining from bidding against each other

9    for certain properties at the public auction; (b) negotiating payoffs at the secondary

10   auctions, also known as round robins or rounds, or "step-aside" payments; (c) completing

11   the sale by submitting a Receipt of Funds to the auctioneer, receiving the Trustee's Deed

12   in the mail, and making and receiving payoffs, either by cash or check.  Doc. no. 166 at

13   5-7 and Bond Decl.

14   To establish the second *Larson* prong, the government has sufficiently

15   demonstrated that the defendant had knowledge of, and participated in, the conspiracy

16   with the information provided in Appendices A through F, except as to anonymous

17   documents which lack authentication, i.e., typewritten portions of ledgers that were

18   seized from coconspirator Michael Marr's office, listed in Appendix B, and unidentified

19   handwriting on round sheets that were produced by cooperating coconspirators, listed in

20   Appendix A.  The government contends that these documents written by unidentified

21   authors are admissible as coconspirator statements because there is strong

22   circumstantial evidence that the documents were made by conspirators in furtherance of

23   the charged conspiracy.  Doc. no. 166 at 13 (citing *United States v. Martinez*, 430 F.3d

24   317, 326 (6th Cir. 2005) ("An anonymous statement may be admissible under Rule

25   801(d)(2)(E) if circumstantial evidence permits a finding by a preponderance of the

26   evidence that there was a conspiracy involving the author and the defendant, and the

27   statement was made in the course and furtherance of the conspiracy."); *United States v.*

28

United States District Court
Northern District of California

*Helmel*, 769 F.2d 1306, 1313 (8th Cir.1985) ("What is essential is that the government show that the unknown declarant was more likely than not a conspirator.").

The government relies on out of circuit authority to support its contention that it only needs to prove that the anonymous statements were necessarily written by someone in the conspiracy, without having to provide positive proof to identify the author to establish admissibility as coconspirator statements.  Doc. no. 166 at 14 (citing *Helmel*, 769 F.2d at 1313) (requiring the government to show only that the unknown declarant was more likely than not a conspirator, without proving the declarant's identity).  The Ninth Circuit has not, however, expressly adopted this standard.  Current Ninth Circuit authority requires the government to identify, at least by a preponderance of the evidence, the declarant of anonymous statements that are proffered as coconspirator statements.  In *United States v. Mouzin*, 785 F.2d 682, 692-93 (9th Cir. 1986), the court held that an anonymous cocaine distribution ledger found in the home of the defendant was not admissible as the statement of a coconspirator under Rule 801(d)(2)(E), for lack of a proper foundation, reasoning that "[k]nowledge of the identity of the declarant is essential to a determination that the declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy."  Here, the anonymous ledgers seized from Marr's office and unidentified handwriting on round sheets similarly suffer from lack of foundation to authenticate those documents.

To establish the admissibility of the anonymous documents as coconspirator statements, the government cites Ninth Circuit authority applying the preponderance of the evidence standard for identifying the author of anonymous statements, but those cases do not hold that anonymous statements are admissible as coconspirator statements based on evidence showing that the statements would have been made by an unidentified coconspirator, as the government seems to suggest.  In *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995), the court held that the government proved by a preponderance of the evidence that anonymous ledgers were the defendants' statements, citing circumstantial evidence that the ledgers were located in the

1 defendants' residences and entries corresponded to surveilled activities.  *See also United*

2 *States v. Smith*, 893 F.2d 1573, 1578 (9th Cir. 1990) (holding that the evidence amply

3 supported the government's theory that an anonymous calendar/drug ledger was

4 authored by a named coconspirator and that the trial court did not err in admitting it into

5 evidence under FRE 801(d)(2)(E)); *United States v. Schmit,* 881 F.2d 608, 610 (9th Cir.

6 1989) (holding that circumstantial evidence was sufficient to show that a named

7 coconspirator (the defendant's son) was the author of anonymous handwritten notes

8 under a preponderance of the evidence standard to show admissibility under FRE

9 801(d)(2)(E)).  Unlike the ledgers at issue in *Gil* which were found in the defendants'

10 home, or the anonymous documents admitted in *Florida* which were seized from the

11 defendants' offices, the anonymous documents proffered by the government here were

12 not located in Guillory's home or office, but rather seized from the offices of a defendant

13 charged in another case or provided by a cooperating coconspirator.  The government's

14 argument that these documents were more likely than not authored by an unnamed

15 participant in the conspiracy does not establish an adequate foundation for their

16 admissibility.

17 With respect to anonymous round sheets and ledgers proffered as coconspirator

18 statements, in the absence of a proper foundation for admissibility required by *Mouzin*

19 and for authentication under FRE 901(a), the proffered statements by an "unidentified"

20 author will not be admitted under FRE 801(d)(2)(E).  *See, e.g.*, Appx. A, Exs. 123 and

21 145 (notes of unidentified coconspirator, highlighted in pink); Appx. B, Exs 70-74 and 250

22 (typed portions of ledgers by unidentified coconspirator).

23 Except for the anonymous coconspirator statements discussed above, the

24 government has sufficiently specified (A) the round sheets, (B) payoff ledgers, (C) emails,

25 and (E) other miscellaneous documents, by providing copies of those categories of

26 documents.  The government also provided transcripts of the excerpts of the (D) audio-

27 video recordings containing the coconspirator statements, identifying those statements

28 with sufficient specificity.

12

1    With respect to witness testimony, defendant objects to the notice of coconspirator

2    statements provided in Appendix F for lack of specificity, particularly as to the time frame

3    of the alleged coconspirator statements which are generally indicated only in years.  Doc.

4    no. 194 at 3.  Defendant's objection based on lack of specificity is OVERRULED on the

5    ground that the government provided highlighted portions of the underlying FBI witness

6    interview reports to identify the coconspirator statements with sufficient specificity to give

7    the defense notice of the anticipated witness testimony.

8    **III.    Jury Instructions**

9    **A.    Jointly Proposed Instructions**

10   The court adopts the jury instructions proposed jointly by the parties, doc. no. 191,

11   and the pretrial rulings on instructions and the applicable final instructions given in *United*

12   *States v. Joyce,* CR 14-607-4 PJH, doc. nos. 232, 255.  The parties must file a final set of

13   the jury instructions, reflecting the court's pretrial rulings on the disputed instructions and

14   renumbered in the sequence given in *Joyce*, by the first day of trial, as well as email a

15   blind copy without citations to the court's proposed order email address.

16   **B.    Disputed Instructions**

17   The court rules on the instructions that remain subject to dispute as to defendant

18   Guillory as follows:

19   **1.   Instruction No. 18: Bid Rigging**

20   The government objects to including the following modification to the ABA model

21   bid-rigging instruction, as it was given in *Florida*, as unnecessary: "An internal agreement

22   only between owners and employees of the same company does not constitute a

23   conspiracy."  Doc. no. 191.  Guillory opposes deletion of this modification.  Because this

24   instruction will assist the jury, given the alleged involvement of defendant's son, the court

25   overrules the government's objection and adopts this modification in proposed Instruction

26   No. 18.  The remainder of proposed Instruction No. 18 will be given as modified in *Joyce*,

27   doc. no. 255 ("Instruction No. 4").

28

United States District Court
Northern District of California

## 2.  Instruction No. 21: Owner or Superior-Individual Responsibility

The government proposes an instruction on the responsibility of an owner or manager to address the responsibility of defendant Guillory for the actions of his son. Defendant objects to this instruction as repetitive of other instructions and potentially in conflict with stipulated instruction No. 17 on Elements of the Bid Rigging Offense.  He also argues that the government's proposed superior liability instruction "does not deal with the concept of authorized agents acting within the course and scope of their agency, aiders/abettors and/or co-conspirators," as contemplated in the indictment.  Doc. no. 207 at 3.

The ABA model instruction (ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* (2009) at 101-102) that is cited by the government specifically refers to corporate responsibility, and the government does not provide any authority extending this corporate responsibility instruction to individuals on a quasi-respondeat superior theory.  The government cites *United States v. Wise*, 370 U.S. 405, 416 (1962), where the Court held that a corporate officer is subject to prosecution under § 1 of the Sherman Act "whenever he knowingly participates in effecting the illegal contract, combination, or conspiracy—be he one who authorizes, orders, or helps perpetrate the crime—regardless of whether he is acting in a representative capacity."  The government also cites *United States v. Brown*, 936 F.2d 1042, 1047 (9th Cir. 1991), where the Ninth Circuit upheld the following instruction, based on the holding of *Wise* recognizing that corporate officers may be held criminally liable for the illegal actions of subordinates if they knowingly authorized or consented to such behavior:

> Defendants Hal Brown, Jr. and Michael F. Tobey were officials of Gannett and Foster & Kleiser with subordinate employees under their supervision during the time of their alleged involvement in the conspiracy charged in the Information.
>
> To find the defendant liable for the acts of the subordinate as distinguished from his own acts, you must find beyond a reasonable doubt that the defendant knew of the existence of the conspiracy and knowingly authorized[,] ordered or consented to the participation of a subordinate in that

United States District Court
Northern District of California

conspiracy. A company official who knowingly participates in the conspiracy in this manner is liable to the same extent as any other member of the conspiracy.

The government has not cited authority extending the "knowingly authorized" standard for vicarious criminal liability outside the corporate context, where an officer may try to avoid individual criminal liability distinct from the corporation's liability.  The ABA commentary reflects that the model instruction "confirms the common sense rule that the fact that actions are taken with intent to further corporate business does not relieve the agent of criminal responsibility, and conversely that criminal liability attaches not because of a corporate officer's position, but because the officer acts or fails to act in conformity with the duty imposed by statute."   ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases* (2009) at 101-102.  Those concerns about responsibility in the corporate environment, and distinguishing between corporate and corporate officer responsibility, are not present here.  The government's proposed instruction No. 21 is therefore STRICKEN.

### 3.  Instruction No. 37: Testimony of Witnesses Involving Special Circumstances - Immunity, Benefits, Accomplice, Plea

The court ADOPTS proposed Instruction No. 37 as unopposed.  Doc. no. 207 at 3. At the close of evidence, the parties are instructed to modify this instruction to add the specific names of the relevant government witnesses.

## IV.    Juror Questionnaire and Voir Dire

The court will issue a modified version of the written juror questionnaire that was given in *Joyce,* doc. no. 228-1, 234, a copy of which is attached as an appendix to this order.  The court will conduct the voir dire, and will allow 20 minutes of follow-up questions per side.

United States District Court
Northern District of California

**V.      Verdict Form**

The court ADOPTS the proposed verdict form jointly proposed by the parties. Doc. no. 183.

**IT IS SO ORDERED.**

Dated:  March 17, 2017

_____

PHYLLIS J. HAMILTON
United States District Judge